IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| TIMOTHY RUDISON, | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:21-cv-168 |
| | § | |
| BRADLY JOHNSON, | § | |
| JOSHUA SOLIS, | § | |
| LANCE LOFTON, and | § | |
| MELODY WIND, | § | |
|     *Defendants*. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, Timothy Rudison, Plaintiff, complaining of, Bradly Johnson, Joshua Solis, Lance Lofton, and Melody Wind and for cause of action will respectfully show unto the Court as follows:

## SUMMARY

On or about September 10, 2019, Plaintiff Timothy Rudison was brutally beaten by Defendants Bradly Johnson, Joshua Solis, and Lance Lofton, who worked as prison guards at the French Robertson Unit in Abilene, Texas. Another prison guard, Defendant Melody Wind, failed to intervene and held down Mr. Rudison's legs during the vicious assault. After the beating, Plaintiff Rudison was forced to lay covered in blood in his cell for fifteen minutes. Subsequently, Plaintiff Rudison was transported to the hospital where it was determined that Plaintiff Rudison suffered a fractured left ear drum, broken eye sockets, multiple scars to his neck, arm, legs, and knees as well as internal bleeding. Plaintiff Rudison now sues for violations of his constitutional rights under the Eighth Amendment to be free from cruel and unusual punishment.

## I.
## PARTIES

1.    Plaintiff Timothy Rudison is an individual who is currently incarcerated at Texas Department of Criminal Justice ("TDCJ") French Robertson Unit located at 12071 FM 3522 Abilene, TX 79601.

2.    At all times relevant to this lawsuit, Defendant Bradly Johnson was an employee of Texas Department of Criminal Justice French Robertson Unit located at 12071 FM 3522 Abilene, TX 79601. Defendant Johnson can be served through TDCJ or wherever he may be found. Defendant Johnson is being sued in his individual capacity.

3.    At all times relevant to this lawsuit, Defendant Joshua Solis was an employee of Texas Department of Criminal Justice French Robertson Unit located at 12071 FM 3522 Abilene, TX 79601. Defendant Solis can be served through TDCJ or wherever he may be found. Defendant Solis is being sued in his individual capacity.

4.    At all times relevant to this lawsuit, Defendant Lance Lofton was an employee of Texas Department of Criminal Justice French Robertson Unit located at 12071 FM 3522 Abilene, TX 79601. Defendant Lofton can be served through TDCJ or wherever he may be found. Defendant Lofton is being sued in his individual capacity.

5.    At all times relevant to this lawsuit, Defendant Melody Wind was an employee of Texas Department of Criminal Justice French Robertson Unit located at 12071 FM 3522 Abilene, TX 79601.  Defendant Wind can be served through TDCJ or wherever she may be found. Defendant Wind is being sued in her individual capacity.

## II.
## JURISDICTION AND VENUE

6.    The Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.

Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391 because all or of a substantial part of the causes of action accrued in the Northern District of Texas.

### III.
### FACTS AND ALLEGATIONS

### Defendant Solis' History of Excessive Force

7.    Prior to the incident which makes the basis of this lawsuit, Defendant Joshua Solis received two prior reprimands for using excessive force against inmates.

8.    On January 13, 2019, Defendant Solis received a reprimand for use of excessive or unnecessary force at the Robertson Unit.

9.    According to the synopsis of the incident, "On January 13, 2019, Officer Solis was involved in a use of force in which he spontaneously administered chemical agents in a non-emergency situation."

**Texas Department of Criminal Justice**
**REPRIMAND FORM**

OIG Number
LE/I/NI
EEO Number

Employee Name: Solis                        Joshua              P.        SSN:
               Last                          First              MI
Payroll Job Title:   CO III                          Unit or Department:   Robertson
Date of Violation(s):        01/13/19      Date Pre-Hearing Investigation Completed:   01/31/19

VIOLATION(S):                                                   FINDINGS (check one [1]): GUILTY
Level:   3    Number:  24a  Rule Title: Use of Excessive or Unnecessary Force - Provoked without Serious    ☑ Yes  ☐ No
Level:        Number:       Rule Title:                                                    ☐ Yes  ☐ No

Synopsis of Incident:
On January 13, 2019 Officer Solis was involved in a use of force in which he spontaneously administered chemical agents in a non emergency situation.

DISCIPLINARY ACTION:
Is this a subsequent violation?    ☐ Yes ☐ No    If yes, list applicable previous rule number violation(s) and disciplinary date(s):

Check and complete one or more of the following:
☐  NO DISCIPLINE IMPOSED (Provide justification at bottom of page if guilty findings.)
☐  REPRIMAND ONLY
☑  DISCIPLINARY PROBATION:         3    Calendar Months Beginning:  2/1/15    Ending:  4/30/19
☐  SUSPENSION WITHOUT PAY:              Workdays Beginning:                   Return:
☐  REDUCTION IN PAY TO:    $            Beginning:                            Ending:
     Method used:          ☐    %    ☐ Step (number of steps)         ☐ Minimum established rate
☐  DEMOTION TO (Title and Salary Group)              Beginning:               Ending:
☐  DISMISSAL RECOMMENDED

DISCIPLINE IS:     ☑ Within  ☐ Above ☐ Below the guidelines.  Provide justification at the bottom of the page if above or below.
For violations of Rule Number 24 or 25, check one (1) of the following: This violation ☐ did ☑ did not involve an aggravated use of excessive force.
JUSTIFICATION (if applicable):

Steven Sperry Warden II
Reprimanding Authority Name and Title (printed)          Signature                        Date  2/1/19

Employer's Acknowledgment: I have been advised of the procedures of progressive disciplinary actions, and my right to file a grievance.  I acknowledge
receipt of a copy of this reprimand and know the original is to be placed in my Master Human Resources File.  If recommended for dismissal, I verify the
following are my current address and phone number.
Mailing Address:

Phone Number, Including Area Code:
                                                          Date:  2-1-19
Employee Signature:

Note to Employee:  With few exceptions, you are entitled upon request (1) to be informed about the information the Agency collects about you; and (2) under Texas Government Code
§§550.021 and 552.023, to receive and review the collected information.  Under Texas Government Code §550.004, you are also entitled to request, in accordance with the Agency's
procedures, that incorrect information the Agency has collected about you be corrected.
Original:  Employee Relations, HRHQ (with copy of support documentation)
Copy:  Employee
Copy:  Unit or Department Employee Disciplinary File

                                     HUMAN RESOURCES          **RECEIVED**
                                     EMPLOYEE RELATIONS        FEB 07 2019
                                                              EMPLOYEE RELATIONS
                                        MAR 18 2019

PERS 185 (07/18)

10.    On January 14, 2019, Defendant Solis received a reprimand for use of
excessive or unnecessary force at Robertson Unit.

11.     According to the synopsis of the incident, "On January 14, 2019, Officer Solis was involved in a use of force in which he spontaneously administered chemical agents in a non-emergency situation."

**Texas Department of Criminal Justice**
**REPRIMAND FORM**

OIG Number
MAUF Number
EEO Number

Employee Name: Solis          Joshua          P.     SSN:
          Last                First                MI

Payroll Job Title:   CO III                Unit or Department:        Robertson
Date of Violation(s):   01/14/19       Date Pre-Hearing Investigation Completed:   01/31/19

VIOLATION(S):                                           FINDINGS (check one [1]): GUILTY
Level:   2   Number:  24c  Rule Title: Use of Excessive or Unnecessary Force - Non-Provoked without Serious   ☑ Yes  ☐ No
Level: ___ Number: ___ Rule Title: _____   ☐ Yes  ☐ No

Synopsis of Incident:
On January 14, 2019 Officer Solis was involved in a use of force in which he spontaneously administered chemical agents in a non-emergency situation.

DISCIPLINARY ACTION:
Is this a subsequent violation?   ☑ Yes ☐ No   If yes, list applicable previous rule number violation(s) and disciplinary date(s):
24a

Check and complete one or more of the following:
☐ NO DISCIPLINE IMPOSED (Provide justification at bottom of page if guilty findings.)
☐ REPRIMAND ONLY
☑ DISCIPLINARY PROBATION:   6  Calendar Months Beginning:  5/1/19   Ending:  10/31/19
☐ SUSPENSION WITHOUT PAY: ___ Workdays Beginning: ___ Return: ___
☐ REDUCTION IN PAY TO:  $___ Beginning: ___ Ending: ___
   Method used: ___ __% Step (number of steps) ___ Minimum established rate ___
☐ DEMOTION TO (Title and Salary Group) ___ Beginning: ___ Ending: ___
☐ DISMISSAL RECOMMENDED

DISCIPLINE IS:   ☑ Within ☐ Above ☐ Below the guidelines.  Provide justification at the bottom of page if above or below.
For violations of Rule Number 24 or 25, check one (1) of the following: This violation ☐ did ☑ did not involve an aggravated use of excessive force.
JUSTIFICATION (If applicable):

Steven Sperry Warden II
Reprimanding Authority Name and Title (printed)      Signature          Date  2/1/19

Employee's Acknowledgement: ...

Mailing Address:
Phone Number, Including Area Code:
Employee Signature:          Date:  2-1-19

Original: Employee Relations, HR002 ...
Copy: Employee
Copy: Unit or Department Employee Disciplinary File

**RECEIVED**
HUMAN RESOURCES
EMPLOYEE RELATIONS
FEB 07 2019
EMPLOYEE RELATIONS

MAR 18 2019

PERS 185 (07/18)

5

**Excessive Force Against Plaintiff Rudison**

12.    At all times relevant to this suit, Plaintiff Rudison was an inmate at the French Robertson Unit Prison (hereinafter referred to as the "French Robertson Unit") located in Abilene, Texas.

13.    At all times relevant to this suit, Defendants Bradly Johnson, Joshua Solis, Lance Lofton, and Melody Wind served as prison guards at the French Robertson Unit.

14.    On or about September 10, 2019, Plaintiff Timothy Rudison was sleeping in his cell.

15.    Defendants Bradly Johnson, Joshua Solis, Lance Lofton, and Melody Wind entered Plaintiff Rudison's cell during an alleged contraband interdiction.

16.    Plaintiff Rudison's cellmate was escorted out of the cell.

17.    Plaintiff Rudison attempted to flush two notes down the toilet but was unsuccessful.

18.    Plaintiff Rudison was laying on the floor of his cell after being placed in hand restraints by Defendant Johnson.

19.    Defendant Johnson began punching Plaintiff Rudison on the left side of his face repeatedly.

20.    Defendant Solis joined in the assault by punching Plaintiff Rudison on the right side of his face repeatedly.

21.    Defendant Lofton struck Plaintiff Rudison in the head with a walkie talkie and began punching Plaintiff in the face, head, and jaw.

22.    Defendant Wind grabbed Plaintiff Rudison's legs twisting them as the assault continued.

6

23.    As Plaintiff Rudison was restrained he could only put his head down in an attempt to protect his teeth from being knocked loose.

24.    While Defendants Johnson, Solis, and Loftin repeatedly struck Plaintiff Rudison as Defendant Wind held Plaintiff Rudison's legs, Plaintiff Rudison was not resisting as his hands were already restrained, and he was simply attempting to protect himself from the barrage of punches and strikes with the walkie talkie.

25.    While Defendants Johnson, Solis, and Loftin repeatedly struck Plaintiff Rudison as Defendant Wind held Plaintiff Rudison's legs, Plaintiff Rudison was not threatening any officer or other inmate as his hands were already restrained, and he was simply attempting to protect himself from the barrage of punches and strikes with the walkie talkie.

26.    While Defendants Johnson, Solis, and Loftin repeatedly struck Plaintiff Rudison as Defendant Wind held Plaintiff Rudison's legs, Plaintiff Rudison was not attempting to flee or escape the prison as his hands were already restrained, he was inside of his cell, and he was outnumbered four officers to one, and was simply attempting to protect himself from the barrage of punches and strikes with the walkie talkie.

27.    The assault only ceased when Plaintiff Rudison became motionless.

28.    The Defendants left Plaintiff Rudison bleeding on the floor of his cell for fifteen minutes.

29.    Afterwards Plaintiff Rudison was placed in leg restraints and placed in a holding cell.

30.    Plaintiff Rudison was transported to the emergency room at Hendrick Health System Hospital for his injuries.

7

31.    As a result of the excessive use of force by Defendants Johnson, Solis, and Lofton as Defendant Wind held Plaintiff Rudison down, Plaintiff Rudison suffered numerous injuries including a fractured left ear drum, broken eye sockets, multiple scars to his neck, arm, legs, and knees, as well as internal bleeding.

32.    These injuries were not caused by any other means.

33.    Below is a hospital report detailing Plaintiff Rudison's extensive injuries caused by Defendant Johnson repeatedly punching him, Defendant Solis repeatedly punching him, Defendant Lofton repeatedly striking him with a walkie talkie and punching him, and Defendant Wind holding him down so that the other three defendants could continue to assault him as he was already laying on the floor with his hands restrained inside of his cell.

## HMC VRF ADDENDUM

| RUDISON, TIMOTHY | MR#: 1368359 | Visit#: 50670840 | Admit Date: 09/11/2019 01:10:00 AM |
|---|---|---|---|
| Location: TCB - UR18 1 | DOB: 03/27/1978 | Age: 41y | Gender: Male |
| Attd Phys: Dizon, Jonathan | Visit Status/Type: DSC / Emergency | | Service:TC |

**Displaying charting updated between 09/11/2019 03:19:00 AM and 10/11/2019 01:27:49 PM**

### Health Issue

| | | | | | |
|---|---|---|---|---|---|
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | S90.02XA | Contusion of left ankle | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | S00.12XA | Contusion of left eyelid and periocular area, initial encounter | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | S00.83XA | Contusion of other part of head, initial encounter | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | S00.11XA | Contusion of right eyelid and periocular area, initial encounter | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | S40.011A | Contusion of right shoulder | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | H02.846 | Edema of left eyelid | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | R51 | Headache | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | J35.2 | Hypertrophy of adenoids | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | Z65.1 | Imprisonment and other incarceration | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | R68.84 | Jaw pain | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | M25.572 | Left ankle pain | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | Y35.393A | Legal intervention involving other blunt objects, suspect injured, initial encounter | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | M54.2 | Neck pain | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | M79.89 | Other disorders of soft tissue | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | H05.89 | Other orbital disorder | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | Z98.890 | Other specified postprocedural state | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | H57.13 | Pain of both eyes | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | M25.551 | Pain of right hip | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | Y92.149 | Prison as place of occurrence of external cause | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | M25.511 | Right shoulder pain | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | S09.22XA | Traumatic rupture of left ear drum | scmprodsrv, scmprodsrv |

| Report: HMC_VRF_Document | Date: 10/11/19 13:27 PM |
|---|---|
| Location: | **17**    Page 1 |

##START~1368359~50670840~HI_LISTA~##END

## HMC VRF ADDENDUM

| RUDISON, TIMOTHY | MR#: 1368359 | Visit#: 50670840 | Admit Date: 09/11/2019 01:10:00 AM |
|---|---|---|---|
| Location: TCB - UR18 1 | DOB: 03/27/1978 | Age: 41y | Gender: Male |
| Attd Phys: Dizon, Jonathan | Visit Status/Type: DSC / Emergency | | Service:TC |

**Displaying charting updated between 09/11/2019 03:19:00 AM and 10/11/2019 01:27:49 PM**

### Health Issue

| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | T79.7XXA | Traumatic subcutaneous emphysema | scmprodsrv, scmprodsrv |
|---|---|---|---|---|---|
| Primary Dsch Dx | 09/19/2019 16:21 | ICD-10 | S02.32XA | Closed fracture of left orbital floor | scmprodsrv, scmprodsrv |
| Secndry Dsch Dx | 09/19/2019 16:21 | ICD-10 | S02.31XA | Closed fracture of right orbital floor | scmprodsrv, scmprodsrv |

##START~1368359~50670840~HI_LIST~##END

## HMC VRF Report

| RUDISON, TIMOTHY | | MR#: 1368359 | Visit#: 50670840 | Admit Date: 09/11/2019 |
|---|---|---|---|---|
| Location: TCB - UR18 1 | | DOB: 03/27/1978 | Age: 41y | Gender: Male |
| Attd Phys: Dizon, Jonathan | | Visit Status/Type: DSC / Emergency | | Service:TC |

### Health Issue

| | | | | | |
|---|---|---|---|---|---|
| Discharge Dx | 09/11/2019 02:42 | ICD-10-Billable | S90.02XA | Contusion of left ankle | Dizon, Jonathan |
| Discharge Dx | 09/11/2019 02:42 | ICD-10-Billable | S40.011A | Contusion of right shoulder | Dizon, Jonathan |
| Discharge Dx | 09/11/2019 02:42 | ICD-10-Billable | S00.83XA | Facial contusion | Dizon, Jonathan |
| Discharge Dx | 09/11/2019 02:41 | ICD-10-Billable | S02.30XA | Fracture of inferior orbital wall | Dizon, Jonathan |
| Discharge Dx | 09/11/2019 02:42 | ICD-10-Billable | S09.22XA | Traumatic tympanic membrane perforation, left, initial encounter | Dizon, Jonathan |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | S90.02XA | Contusion of left ankle | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | S00.12XA | Contusion of left eyelid and periocular area, initial encounter | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | S00.83XA | Contusion of other part of head, initial encounter | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | S00.11XA | Contusion of right eyelid and periocular area, initial encounter | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | S40.011A | Contusion of right shoulder | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | H02.846 | Edema of left eyelid | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | R51 | Headache | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | J35.2 | Hypertrophy of adenoids | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | Z65.1 | Imprisonment and other incarceration | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | R68.84 | Jaw pain | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | M25.572 | Left ankle pain | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | Y35.393A | Legal intervention involving other blunt objects, suspect injured, initial encounter | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | M54.2 | Neck pain | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | M79.89 | Other disorders of soft tissue | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | H05.89 | Other orbital disorder | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | Z98.890 | Other specified postprocedural state | scmprodsrv, scmprodsrv |

##START~1368359~50670840-HI_LIST-##END

# HMC VRF Report

| RUDISON, TIMOTHY | | MR#: 1368359 | | Visit#: 50670840 | Admit Date: 09/11/2019 |
| --- | --- | --- | --- | --- | --- |
| Location: TCB - UR18 1 | | DOB: 03/27/1978 | | Age: 41y | Gender: Male |
| Attd Phys: Dizon, Jonathan | | Visit Status/Type: DSC / Emergency | | | Service:TC |

## Health Issue

| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | H57.13 | Pain of both eyes | scmprodsrv, scmprodsrv |
| --- | --- | --- | --- | --- | --- |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | M25.551 | Pain of right hip | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | Y92.149 | Prison as place of occurrence of external cause | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | M25.511 | Right shoulder pain | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | S09.22XA | Traumatic rupture of left ear drum | scmprodsrv, scmprodsrv |
| Discharge Dx In | 09/19/2019 16:21 | ICD-10 | T79.7XXA | Traumatic subcutaneous emphysema | scmprodsrv, scmprodsrv |
| Primary Dsch Dx | 09/19/2019 16:21 | ICD-10 | S02.32XA | Closed fracture of left orbital floor | scmprodsrv, scmprodsrv |
| Scendry Dsch Dx | 09/19/2019 16:21 | ICD-10 | S02.31XA | Closed fracture of right orbital floor | scmprodsrv, scmprodsrv |

| Report: HMC_VRF_Document | Date: 09/23/19 10:29 AM |
| --- | --- |
| Location:  Hendrick Medical Center | 20   Page 2 |

,



##START~1368359~50670840~HMCEDDIS~##END

| **HMC VRF Document** | | | |
|---|---|---|---|
| RUDISON, TIMOTHY | MR#: 1368359 | Visit#: 50670840 | Admit Date: 09/11/2019 01:10:00 AM |
| Location: TCB - UR18 1 | DOB: 3/27/1978 | Age: 41y | Gender:Male |
| Attd Phys: Dizon, Jonathan | Visit Status/Type:  DSC / Emergency | | Service:TC |

**HMC ED Provider Disposition**

| | |
|---|---|
| **ED Provider Disposition:** | |
| **Disposition:** | |
| **Disposition** | Discharged |
| **Disposition Decision Time:** | 11-Sep-2019 02:39 |
| **Discharged Location** | jail/police custody |
| **Condition** | stable |
| **Meds Given in the ED** | Ondansetron Injectable |
| | fentaNYL Injectable |
| | (ADM OVERRIDE) |
| | (ADM OVERRIDE) |
| **Diagnosis** | Contusion of left ankle[S90.02XA] |
| | Contusion of right shoulder[S40.011A] |
| | Facial contusion[S00.83XA] |
| | Fracture of inferior orbital wall[S02.30XA] |
| | Traumatic tympanic membrane perforation, left, initial encounter[S09.22XA] |
| | |
| **Home Meds and Rx:** | |
| **Prescription/ New Medications** | acetaminophen 500 mg oral tablet - 2 tab(s) orally 2 times a day prn pain |
| | Zofran ODT 4 mg oral tablet, disintegrating - 1 tab(s) orally every 8 hours prn nausea/vomiting |
| **Order Reconciliation status** | Not Done |
| | |
| **DC Instructions:** | |
| **Follow up with your Primary Care Physician in** | 2 days |
| **Clinics** | Abilene Community Health Center, 1749 Pine St, Abilene.  Please call 325-696-0600 to schedule an appointment. |
| **Follow-up Details** | Jail physician |

**Electronic Signatures:**
Dizon, Jonathan  (DO)  (Signed 11-Sep-2019 02:43)
     *Authored: ED Provider Disposition*

*Last Updated: 11-Sep-2019 02:43 by Dizon, Jonathan (DO)*

| Report: HMC_EOV_Document | Date: 9/23/2019 10:29:04 AM |
|---|---|
| Location: TCB - UR18 1 | Page 1 |

34.    Highlighted below in one of the hospital reports is a "brief description" of what caused Plaintiff Rudison's injuries, which states, "Patient came from prison here he was hit repeatedly in the face/head with a walkie talkie."

35.    Defendant Lofton is the person who hit Plaintiff Rudison repeatedly in the face/head with a walkie talkie.

##START~1368359~50670840~TRANTE~##END

## HMC VRF Document

| | | | |
|---|---|---|---|
| RUDISON, TIMOTHY | MR#: 1368359 | Visit#: 50670840 | Admit Date: 09/11/2019 01:10:00 AM |
| Location: TCB - UR18 1 | DOB: 3/27/1978 | Age: 41y | Gender:Male |
| Attd Phys: Dizon, Jonathan | Visit Status/Type: DSC / Emergency | | Service:TC |

**Trauma Note**

**Arrival Information:**
**Arrival Information:**
- **Admit Time** — 11-Sep-2019 01:10
- **Trauma Activation** — N/A
- **Mode of Transport** — Ground
- **Name of EMS** — Scene Call
- **Name of EMS** — From Robertson Prison

**Presentation on Arrival to ED:**
- **Pressure Ulcer POA** — none

**Pre-Arrival Meds/Interventions:**
- **Pre-arrival Medications** — none
- **Other Pre-Arrival Interventions** — none

**Pre-Arrival History / I&O:**
**Triage Historian:**
- **Triage Historian** — patient

**Accompanied By:**
- **Accompanied By** — law enforcement

**Pre-Arrival History / I&O:**

**Accident Description:**
- **Brief Description of Accident** — Patient came from prison where he was hit repeatedly in the face/head w/ a walkie talkie.

**Presentation on Arrival:**
**ESI Acuity:**
- **ESI Triage Acuity level** — 2

**Mechanism of Injury:**
**Mechanism of Injury:**
- **Mechanism of injury** — Blunt trauma
- **Blunt Trauma Source** — walkie talkie
- **Suspected head injury?** — Yes

**Injury Details:**
- **Time of Injury** — 21:00
- **Location** — Robertson Prison- unknown loc

**Trauma Team Members:**
**Responding to Trauma Activation:**
ED Physician Dizon Time: 01:33.

Nurse A E. Dillingham, RN Time: 01:10.

Recorder E. Dillingham, RN Time: 01:10.

| | |
|---|---|
| **Report: HMC_EOV_Document** | **Date: 9/23/2019 10:29:05 AM** |
| **Location: TCB - UR18 1** | **Page 1** |

**52**



**HMC VRF Document**

| RUDISON, TIMOTHY | MR#: 1368359 | Visit#: 50670840 | Admit Date: 09/11/2019 01:10:00 AM |
|---|---|---|---|
| Location: TCB - UR18 1 | DOB: 3/27/1978 | Age: 41y | Gender: Male |
| Attd Phys: Dizon, Jonathan | Visit Status/Type: DSC / Emergency | | Service: TC |

**Trauma Note**

Primary Assessment:
Primary Assessment:

| | |
|---|---|
| Farenheit | 98.4 degrees F |
| Celsius | 36.8 degrees C |
| Site | temporal |
| Heart Rate | ↓ 53 bpm |
| Respirations (breaths/min) | 18 |
| Oxygen Device | 99 % |
| Non Invasive Systolic BP | room air |
| Non Invasive Diastolic BP | 134 mm Hg |
| Mean | ↑ 91 mm Hg |
| ft | 105 mm Hg |
| inch | 6 feet |
| cm | 0 inch |
| lb | 182.88 cm |
| kg | 167.5 lb |
| BMI (kg/m2) | 76 kg |
| BSA (m2) | 22.7 kg/M2 |
| Method | 0 M2 |
| | standing scale |

Primary Survey:

| | |
|---|---|
| • Time | 11-Sep-2019 01:10 |
| • Airway | open and patent |
| • Breathing | spontaneous, unlabored and symmetrical |
| • Breath Sounds | clear |
| • Circulation | strong peripheral pulses with regular rhythm |
| • Skin Condition | warm, dry |
| • Skin Color | normal for race |
| • Disability | patient is alert |
| • Pupils | abnormal |
| • Pupil Reactivity Left | Not tested |
| • Pupil Reactivity Right | Not tested |
| • Additional Pupil Details | ==Patient is unable to open eye due to swelling== |
| • Contact lenses | Eyes - inspected for contact lenses |
| • Contact Lenses | no contact lenses identified |
| • Extraoccular Motion Intact | yes |

Neuro Assessment (Admission):

Neuro Assessment (Admission):

| | |
|---|---|
| • Time: | 01:36 |
| • GCS Eye | (E4) spontaneous |
| • GCS Verbal | (V5) oriented |

| Report: HMC_EOV_Document | Date: 9/23/2019 10:29:05 AM |
|---|---|
| Location: TCB - UR18 1 | Page 2 |

53

36.    Highlighted below in one of the hospital reports is an "Intervention Narrative" describing what caused Plaintiff Rudison's injuries, which states, "Patient brought in by van from Robertson Prison after a situation happened where the patient was hit in the face and head w/ a walkie talkie states the patient +loc. Patient alert and oriented upon arrival to ER."

37.    When the narrative states that "patient +loc", this indicates that Plaintiff Rudison lost consciousness during the beating he received by Defendants Johnson, Solis, and Loftin as Defendant Wind held him down.

38.    Defendant Lofton is the person who hit Plaintiff Rudison in the face and head with a walkie talkie.



39.    Plaintiff Rudison submitted a grievance report detailing his assault.

40.    According to a report detailing the incident, Plaintiff Rudison was allegedly injured as a result of being resistant during his cell search.

41.    However, this report is misleading in that it attempts to minimize the extensive injuries suffered by Mr. Rudison by stating "he was diagnosed with an injury above first aid to his eye area and was returned to the unit."



## Texas Department of Criminal Justice

## Emergency Action Center – Basic Releasable Information

**Offender Name/TDCJ #:**    Rudison, Timothy, TDCJ# 1306524

**Date/Time of Incident:**    September 10, 2019, at approximately 20:57 hours

**Location of Incident:**    Cell

**Injuries Sustained:**

**Known Disciplinary Action:**

**Basic Summary of Incident:**

During a cell search utilizing the contraband interdiction shakedown team, offender Rudison attempted to flush unknown contraband down the toilet. Sergeant Johnson, Bradly attempted to grab offender Rudison's arm to stop the attempt. Offender Rudison struck sergeant Johnson and correctional officer, Solis, Joshua with both elbows, bit correctional officer Lofton, Lance on the forearm and then kicked officer Lofton in the head. A use of force ensued to gain compliance. Offender Rudison was seen by medical and transported via van to Hendricks Health System Emergency Room. He was diagnosed with an injury above first aid to his eye area and was returned to the unit. Staff were seen by medical and noted with minor injuries. During a search, a plastic wrapped ball of suspected K2 and a bundle of papers thought to be saturated with K2 oil were found. The total weight was 0.3 oz. The OIG was notified.

42.     The report is also misleading in that it fails to mention that Mr. Rudison was hit in the head with a walkie talkie.

43.     Of note, the report states that "staff were seen by medical and noted with minor injuries," in comparison to Plaintiff Rudison's injuries: broken eye sockets, eyes completely shut, mouth, nose, and head busted, a fractured left eardrum, and cuts on neck, arms, knees, and legs.

44.     However, if Plaintiff Rudison did resist, Defendants Solis, Johnson, and Lofton's use of force was clearly excessive to the need as Plaintiff Rudison was handcuffed laying down and outnumbered four to one by Defendants Wind, Johnson, Solis, and Wind during the time Plaintiff was repeatedly punched.

45.     Moreover, according to Texas Department of Criminal Justice Policy on Standards for the Use of Force, "all reasonable steps shall be taken to prevent the use of force. However, when no reasonable alternative exists, only the minimum amount of force necessary to control a situation shall be used."

46.     Repeated punching resulting in injuries such as Plaintiff's—broken eye sockets, eyes completely shut, mouth, nose, and head busted, a fractured left eardrum, and cuts on neck, arms, knees, and legs was not the minimum amount of force necessary to control the situation when Plaintiff was outnumbered four to one by Defendants Lofton, Solis, Wind, and Johnson while restrained in handcuffs.



| | | |
|---|---|---|
| **TEXAS DEPARTMENT** | **NUMBER:** | **BP-03.46 (rev. 9)** |
| **OF** | **DATE:** | **October 18, 2018** |
| **CRIMINAL JUSTICE** | **PAGE:** | **1  of  1** |
| | **SUPERSEDES:** | **BP-03.46 (rev. 8)** **February 10, 2012** |

# BOARD  POLICY

**SUBJECT:**     **STANDARDS FOR THE USE OF FORCE**

**AUTHORITY:**     Tex. Gov't Code §§ 411.148, 492.013, 493.001, 493.006(b), 494.001, 494.02(a), 501.002; Tex. Penal Code §§ 9.31–.33, 9.52–.53; BP-02.08, "Statement of Internal Controls"

**APPLICABILITY:**  Texas Department of Criminal Justice (TDCJ)

**POLICY:**

The TDCJ establishes uniform procedures for defining and implementing the use of force. All reasonable steps shall be taken to prevent the necessity for the use of force. However, when no reasonable alternative exists, only the minimum amount of force necessary to control a situation shall be used. In no event shall any type of force be used as a means of discipline or punishment. Additionally, no offender or employee shall suffer harassment or retaliation for providing information regarding a use of force incident.

**PROCEDURES:**

Subject to approval by the Texas Board of Criminal Justice, the procedures for the use of force, use of force equipment, and chemical agents are outlined in the TDCJ *Use of Force Plan.*

_____
Hon. Dale Wainwright, Chairman*
Texas Board of Criminal Justice

**IV.**
**CAUSES OF ACTION**

**Count One**

**Excessive Force**
**Eighth Amendment Violations Pursuant to 42 U.S.C § 1983**
**Against Defendants Johnson, Solis, and Lofton**

**Defendant Johnson**

47.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

48.    Plaintiff was a convicted inmate at the time force was used against him.

49.    Acting under the color of law, Defendant Johnson deprived Plaintiff Rudison of the rights and privileges secured to him by the Eighth Amendment to the United States Constitution and by other laws of the United States to be free from cruel and unusual punishment by way of excessive force.

50.    Plaintiff brings this cause of action pursuant to 42 U.S.C. § 1983.

51.    The amount of force used by Defendant Johnson against Plaintiff as described above, specifically but not limited to, when Defendant Johnson repeatedly punched Plaintiff while Plaintiff was restrained in handcuffs was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, and suffering upon Plaintiff.

52.    The Eighth Amendment of the United States Constitution prohibits cruel and unusual punishment. An inmate's Eighth Amendment rights are implicated when a prison official subjects the inmate to excessive force.

53.    In evaluating excessive force claims under the Eighth Amendment, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore

20

discipline, or maliciously and sadistically to cause harm." *Cowart v. Erwin*, 837 F.3d 444, 452–53 (5th Cir. 2016); quoting *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992).

54.    Though "[t]he focus of this standard is on the detention facility official's subjective intent to punish," intent is determined by reference to the well-known Hudson factors — "the extent of injury suffered, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Cowart*, 837 F.3d at 452–53; *Valencia v. Wiggins*, 981 F.2d 1440, 1449 (5th Cir. 1993); quoting *Hudson*, 503 U.S. at 7.

### Need for the Force

55.    There was absolutely no need for force because Plaintiff Rudison was restrained in handcuffs when Defendant Johnson punched him repeatedly, Mr. Rudison was not attempting to escape as he was laying down in his cell restrained in handcuffs, and Mr. Rudison was not a threat to anyone as he was restrained in handcuffs, did not have a weapon, and was outnumbered by prison guards including Defendant Johnson four to one when he was punched repeatedly in the head.

### Relationship Between Need and The Amount of Force Used

56.    Defendant Johnson used a disproportionate amount of force because no force was necessary due to Plaintiff Rudison being restrained in handcuffs behind his back and simply laying down, yet Defendant Johnson caused blunt force trauma pain when he punched Plaintiff Rudison repeatedly in the head.

### Threat Reasonably Perceived by the Responsible Official

57.    Defendant Johnson did not reasonably perceive—and it would have been unreasonable for Defendant Johnson to perceive—that Plaintiff Rudison was a threat,

because Plaintiff Rudison was restrained in handcuffs and outnumbered four to one by prison guards including Defendant Johnson, Plaintiff Rudison was not a threat to any officer or inmate as he was not armed with a weapon and made no threatening statements or gestures toward anyone, and Plaintiff Rudison was not attempting escape as he was laying down restrained in handcuffs.

### Efforts Made to Temper the Severity of a Forceful Response

58.    Defendant Johnson made no efforts to temper the severity of his forceful response because prior to causing Plaintiff Rudison pain when he repeatedly punched him in the head while Plaintiff Rudison was restrained in handcuffs, Defendant Johnson never gave Plaintiff an order to comply with or a chance to comply with an order and never gave Plaintiff a warning that he was about to use force against him if he did not comply with orders.

59.    Additionally, Defendant Johnson could have tempered the forceful response by simply grabbing ahold of Plaintiff Rudison, or even using force against him in a manner other than punching him repeatedly, despite the fact that a use of force was not necessary at that time due to Plaintiff Rudison being restrained in handcuffs behind his back.

### Defendant Johnson's Use of Force was Unreasonable

60.    Defendant Johnson's use of force was unreasonable due to the fact Plaintiff Rudison had done nothing to warrant being punched in the face repeatedly and since he was restrained and in handcuffs and had simply been laying down, he was not threatening anyone, and made no movement demonstrating that he was trying to escape, and he was not committing any other act that would justify Defendant Johnson's use of force when Defendant repeatedly punched Plaintiff in the head.

22

61.    No reasonable officer would have thought it was necessary to punch the handcuffed Plaintiff Rudison in the head simply while he was laying down on the floor of his cell. Thus, Defendant Johnson's exhibited such wantonness with respect to the unjustified infliction of harm that was tantamount to a knowing willingness that it occurred. *Whitley v. Albers*, 475 U.S. 312, 321, (1986).

62.    A reasonable officer would know that punching a handcuffed inmate is <u>clearly excessive</u> when engaging with inmates such as Plaintiff Rudison, who was restrained in handcuffs, had simply been laying down, was not being non-compliant with orders, who was unarmed, was not threatening any officer or other person, and who the use of force was not warranted.

63.    A reasonable officer would know that punching a handcuffed inmate repeatedly is <u>clearly unreasonable</u> when engaging with inmates such as Plaintiff Rudison, who was restrained in handcuffs, had simply been laying down, was not being non-complaint with orders, was unarmed, was not threatening any officer or other person, and who the use of force was not warranted.

64.    A reasonable officer in Defendant Johnson's position would know that punching a handcuffed inmate who was restrained in handcuffs, had simply been laying down, was not being non-compliant with orders, was unarmed, was not threatening any officer or other person, and who the use of force was not warranted is clearly unreasonable and excessive.

65.    It is clearly established "that a correctional officer's use of excessive physical force against a prisoner may in an appropriate setting constitute cruel and unusual punishment of the prisoner, contrary to the Eighth Amendment, even though the prisoner does not suffer either significant injury or serious injury." *Gomez v. Chandler*, 163 F.3d

921, 922 (5th Cir.1999) (reversing summary judgment in favor of prison officers where there was evidence that the officers knocked the inmate down and punched and kicked his head repeatedly).

66.    *Gomez*, in particular, made clear that an officer who causes "cuts, scrapes, contusions to the face, head, and body" of an inmate by repeatedly striking him without provocation, violates the constitution. *Gomez*, 163 F.3d at 923-24.

67.    That is especially true where, as here, Plaintiff Rudison actually received medical attention for his injuries.

68.    As a direct result of the force used against him by Defendant Johnson, Plaintiff Rudison has suffered physical injury, pain, and suffering for which he sues herein.

69.    These injuries were not caused by any other means.

## **Defendant Solis**

70.    Acting under the color of law, Defendant Solis deprived Plaintiff Rudison of the rights and privileges secured to him by the Eighth Amendment to the United States Constitution and by other laws of the United States to be free from cruel and unusual punishment by way of excessive force.

71.    Plaintiff brings this cause of action pursuant to 42 U.S.C. § 1983.

72.    The amount of force used by Defendant Solis against the Plaintiff as described above, specifically but not limited to, when Defendant Solis repeatedly punched Plaintiff while Plaintiff was restrained in handcuffs was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, and suffering upon Plaintiff.

73.     The Eighth Amendment of the United States Constitution prohibits cruel and unusual punishment. An inmate's Eighth Amendment rights are implicated when a prison official subjects the inmate to excessive force.

74.     In evaluating excessive force claims under the Eighth Amendment, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Cowart v. Erwin*, 837 F.3d 444, 452–53 (5th Cir. 2016); quoting *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992).

75.     Though "[t]he focus of this standard is on the detention facility official's subjective intent to punish," intent is determined by reference to the well-known Hudson factors — "the extent of injury suffered, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Cowart*, 837 F.3d at 452–53; *Valencia v. Wiggins*, 981 F.2d 1440, 1449 (5th Cir. 1993); quoting *Hudson*, 503 U.S. at 7.

**<u>Need for the Force</u>**

76.     There was absolutely no need for force because Plaintiff Rudison was restrained in handcuffs when Defendant Solis punched him repeatedly, Mr. Rudison was not attempting to escape as he was laying down in his cell restrained in handcuffs, and Mr. Rudison was not a threat to anyone as he was restrained in handcuffs, did not have a weapon, and was outnumbered by prison guards including Defendant Solis four to one when he was punched repeatedly.

**<u>Relationship Between Need and the Amount of Force Used</u>**

77.     Defendant Solis used a disproportionate amount of force because no force was necessary due to Plaintiff Rudison being restrained in handcuffs behind his back and

simply laying down, yet Defendant Solis caused blunt force trauma pain when he punched Plaintiff Rudison repeatedly.

## Threat Reasonably Perceived by the Responsible Official

Defendant Solis did not reasonably perceive—and it would have been unreasonable for Defendant Solis to perceive—that Plaintiff Rudison was a threat, because Plaintiff Rudison was restrained in handcuffs and outnumbered four to one by prison guards including Defendant Solis, Plaintiff Rudison was not a threat to any officer or inmate as he was not armed with a weapon and made no threatening statements or gestures toward anyone, and Plaintiff Rudison was not attempting escape as he was laying down restrained in handcuffs.

## Efforts Made to Temper the Severity of a Forceful Response

78.    Defendant Solis made no efforts to temper the severity of his forceful response because prior to causing Plaintiff Rudison pain when he repeatedly punched him while restrained in handcuffs, Defendant Solis never gave Plaintiff an order to comply with or a chance to comply with an order and never gave Plaintiff a warning that he was about to use force against him if he did not comply with orders.

79.    Additionally, Defendant Solis could have tempered the forceful response by simply grabbing ahold of Plaintiff Rudison, or even using force against him in manner other than punching him repeatedly, despite the fact that a use of force was not necessary at the time due to Plaintiff Rudison being restrained in handcuffs behind his back.

## Defendant Solis' Use of Force was Unreasonable

80.    Defendant Solis' use of force was unreasonable due to the fact Plaintiff Rudison had done nothing to warrant being punched repeatedly and since he was restrained and in handcuffs and had simply been laying down, he was not threatening

anyone, and made no movement demonstrating that he was trying to escape, and he was not committing any other act that would justify Defendant Solis' use of force when Defendant repeatedly punched Plaintiff.

81.    No reasonable officer would have thought it was necessary to punch the handcuffed Plaintiff Rudison simply while he was laying down on the floor of his cell. Thus, Defendant Solis' exhibited such wantonness with respect to the unjustified infliction of harm that was tantamount to a knowing willingness that it occurred. *Whitley v. Albers*, 475 U.S. 312, 321, (1986).

82.    A reasonable officer would know that punching a handcuffed inmate is clearly excessive when engaging with inmates such as Plaintiff Rudison, who was restrained in handcuffs, had simply been laying down, was not being non-compliant with orders, who was unarmed, was not threatening any officer or other person, and who the use of force was not warranted.

83.    A reasonable officer would know that punching a handcuffed inmate repeatedly is clearly unreasonable when engaging with inmates such as Plaintiff Rudison, who was restrained in handcuffs, had simply been laying down, was not being non-complaint with orders, was unarmed, was not threatening any officer or other person, and who the use of force was not warranted.

84.    A reasonable officer in Defendant Solis' position would know that punching a handcuffed inmate who was restrained in handcuffs, had simply been laying down, was not being non-compliant with orders, was unarmed, was not threatening any officer or other person, and who the use of force was not warranted is clearly unreasonable and excessive.

27

85.     It is clearly established "that a correctional officer's use of excessive physical force against a prisoner may in an appropriate setting constitute cruel and unusual punishment of the prisoner, contrary to the Eighth Amendment, even though the prisoner does not suffer either significant injury or serious injury." *Gomez*, 163 F.3d at 922 (reversing summary judgment in favor of prison officers where there was evidence that the officers knocked the inmate down and punched and kicked his head repeatedly).

86.     The *Gomez* case, in particular, made clear that an officer who causes "cuts, scrapes, contusions to the face, head, and body" of an inmate by repeatedly striking him without provocation, violates the constitution. *Id*. at 923-24.

87.     That is especially true where, as here, Plaintiff Rudison actually received medical attention for his injuries.

88.     As a direct result of the force used against him by Defendant Solis, Plaintiff Rudison has suffered physical injury, pain, and suffering for which he sues herein.

89.     These injuries were not caused by any other means.

**<u>Defendant Lofton</u>**

90.     Acting under the color of law, Defendant Lofton deprived Plaintiff Rudison of the rights and privileges secured to him by the Eighth Amendment to the United States Constitution and by other laws of the United States to be free from cruel and unusual punishment by way of excessive force.

91.     Plaintiff brings this cause of action pursuant to 42 U.S.C. § 1983.

92.     The amount of force used by Defendant Lofton against the Plaintiff as described above, specifically but not limited to, when Defendant Lofton repeatedly struck Plaintiff in the head with a walkie talkie and punched Plaintiff while Plaintiff was

restrained in handcuffs was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, and suffering upon Plaintiff.

93.    The Eighth Amendment of the United States Constitution prohibits cruel and unusual punishment. An inmate's Eighth Amendment rights are implicated when a prison official subjects the inmate to excessive force.

94.    In evaluating excessive force claims under the Eighth Amendment, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Cowart v. Erwin*, 837 F.3d 444, 452–53 (5th Cir. 2016); quoting *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992).

95.    Though "[t]he focus of this standard is on the detention facility official's subjective intent to punish," intent is determined by reference to the well-known Hudson factors — "the extent of injury suffered, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Cowart*, 837 F.3d at 452–53; *Valencia v. Wiggins*, 981 F.2d 1440, 1449 (5th Cir. 1993); quoting *Hudson*, 503 U.S. at 7.

## <u>Need for the Force</u>

96.    There was absolutely no need for force because Plaintiff Rudison was restrained in handcuffs when Defendant Lofton struck Plaintiff in the head with a walkie talkie and punched him repeatedly, as Plaintiff was not attempting to escape as he was laying down in his cell restrained in handcuffs, and Plaintiff was not a threat to anyone as he was restrained in handcuffs, did not have a weapon, and was outnumbered by prison guards including Defendant Lofton four to one when Defendant Lofton repeatedly struck Plaintiff in the head with a walkie talkie and punched him.

### Relationship Between the Need and the Amount of Force Used

97.     Defendant Lofton used a disproportionate amount of force because no force was necessary due to Plaintiff Rudison being restrained in handcuffs behind his back and simply laying down, yet Defendant Lofton caused blunt force trauma pain when he repeatedly struck Plaintiff in the head with a walkie talkie and punched him.

### Threat Reasonably Perceived by the Responsible Official

98.     Defendant Lofton did not reasonably perceive—and it would have been unreasonable for Defendant Lofton to perceive—that Plaintiff Rudison was a threat, because Plaintiff Rudison was restrained in handcuffs and outnumbered four to one by prison guards including Defendant Lofton, Plaintiff Rudison was not a threat to any officer or inmate as he was not armed with a weapon and made no threatening statements or gestures toward anyone, and Plaintiff Rudison was not attempting escape as he was laying down restrained in handcuffs when Defendant Lofton repeatedly struck Plaintiff in the head with a walkie talkie and punched him.

### Efforts Made to Temper the Severity of a Forceful Response

99.     Defendant Lofton made no efforts to temper the severity of his forceful response because prior to causing Mr. Rudison pain when he repeatedly struck Plaintiff in the head with a walkie talkie and punched him while Plaintiff was restrained in handcuffs, Defendant Lofton never gave Plaintiff Rudison an order to comply with or a chance to comply with an order and never gave Mr. Rudison a warning that he was about to use force against him if he did not comply with orders.

100.     Additionally, Defendant Lofton could have tempered the forceful response by simply grabbing ahold of Plaintiff Rudison, or even using force against him in manner other than repeatedly striking Plaintiff in the head with a walkie talkie and punching him,

despite the fact that a use of force was not necessary at the time due to Plaintiff Rudison being restrained in handcuffs behind his back.

## Defendant Lofton's Use of Force was Unreasonable

101.   Defendant Lofton's use of force was unreasonable due to the fact Plaintiff Rudison had done nothing to warrant being repeatedly struck in the head with a walkie talkie and punched since he was restrained and in handcuffs and had simply been laying down, he was not threatening anyone, and made no movement demonstrating that he was trying to escape, and he was not committing any other act that would justify Defendant Lofton's use of force when Defendant Lofton repeatedly struck Plaintiff in the head with a walkie talkie and punched him.

102.   No reasonable officer would have thought it was necessary to repeatedly strike the handcuffed Plaintiff in the head with a walkie talkie and punch him simply while he was laying down. Thus, Defendant Lofton exhibited such wantonness with respect to the unjustified infliction of harm that was tantamount to a knowing willingness that it occurred. *Whitley v. Albers*, 475 U.S. 312, 321, (1986).

103.   A reasonable officer would know that repeatedly striking Plaintiff in the head with a walkie talkie and punching him while he was handcuffed was <u>clearly excessive</u> when engaging with inmates such as Plaintiff Rudison, who was restrained in handcuffs, had simply been laying down, was not being non-compliant with orders, who was unarmed, was not threatening any officer or other person, and who the use of force was not warranted.

104.   A reasonable officer would know that repeatedly striking Plaintiff in the head with a walkie talkie and punching him while he was handcuffed was <u>clearly unreasonable</u> when engaging with inmates such as Plaintiff Rudison, who was restrained

in handcuffs, had simply been laying down, was not being non-complaint with orders, was unarmed, was not threatening any officer or other person, and who the use of force was not warranted.

105.    A reasonable officer in Defendant Lofton's position would know that repeatedly striking Plaintiff in the head with a walkie talkie and punching him while he was handcuffed, had simply been laying down, was not being non-compliant with orders, was unarmed, was not threatening any officer or other person, and who the use of force was not warranted is clearly unreasonable and excessive.

106.    It is clearly established "that a correctional officer's use of excessive physical force against a prisoner may in an appropriate setting constitute cruel and unusual punishment of the prisoner, contrary to the Eighth Amendment, even though the prisoner does not suffer either significant injury or serious injury." *Gomez*, 163 F.3d at 922 (reversing summary judgment in favor of prison officers where there was evidence that the officers knocked the inmate down and punched and kicked his head repeatedly).

107.    The *Gomez* case, in particular, made clear that an officer who causes "cuts, scrapes, contusions to the face, head, and body" of an inmate by repeatedly striking him without provocation, violates the constitution. *Id*. at 923-24.

108.    That is especially true where, as here, Plaintiff Rudison actually received medical attention for his injuries.

109.    As a direct result of the force used against him by Defendant Lofton, Plaintiff Rudison has suffered physical injury, pain, and suffering for which he sues herein.

110.    These injuries were not caused by any other means.

**Count Two**

**Failure to Intervene
Pursuant to 42 U.S.C § 1983
Against Defendants Johnson, Solis, Wind, and Lofton**

111.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

112.    In *Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013), the Fifth Circuit stated that "an officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017).

113.    It is clearly established in the Fifth Circuit that an officer could be liable as a bystander in a case involving excessive force if he knew a constitutional violation was taking place and had a reasonable opportunity to prevent the harm. *Hale v. Townley*, 45 F.3d 914, 918 (5th Cir. 1995); *Hamilton*, 845 F.3d at 663.

## Defendant Johnson

114.    Defendant Johnson knew that his fellow officers were violating Plaintiff Rudison's constitutional rights by using excessive force in violation of the Eighth Amendment's prohibition on cruel and unusual punishment, he had a reasonable opportunity to prevent the harm, and chose not to act.

115.    Defendant Johnson was deliberately indifferent to the violation of Plaintiff Rudison's right to be free from cruel and unusual punishment.

116.    Defendant Johnson was aware that Plaintiff Rudison was being brutally beaten in violation of his right to be free from cruel and unusual punishment by way of excessive force under the Eighth Amendment as he was part of the beating, was aware

that Plaintiff Rudison was handcuffed with his hands behind his back and did not have a weapon and was outnumbered four to one in his cell.

117.    Defendant Johnson had a reasonable opportunity to prevent Defendants Solis and Lofton from subjecting Plaintiff Rudison to a brutal beating since he was present in the cell, was part of the beating, and was aware Plaintiff Rudison was restrained, simply laying down, was not being non-compliant with orders, was unarmed, and was not threatening any officer or other person at the time he was punched repeatedly and struck with a walkie talkie repeatedly in the head.

118.    Defendant Johnson chose not to take any action to prevent or discontinue the excessive force against Plaintiff Rudison, and instead actively participated in the beating.

119.    As a direct and proximate result, Plaintiff Rudison's constitutional right to be free from cruel and unusual punishment under Eighth Amendment was violated, and he suffered conscious pain and suffering.

120.    These injuries were not caused by any other means.

**Defendant Wind**

121.    Defendant Wind knew that her fellow officers were violating Plaintiff Rudison's constitutional rights by using excessive force in violation of the Eighth Amendment's prohibition on cruel and unusual punishment, she had a reasonable opportunity to prevent the harm, and chose not to act.

122.    Defendant Wind was deliberately indifferent to the violation of Plaintiff Rudison's right to be free from cruel and unusual punishment.

123.    Defendant Wind was aware that Plaintiff Rudison was being brutally beaten in violation of his right to be free from cruel and unusual punishment by way of excessive

force under the Eighth Amendment as she was present in the cell, was holding Plaintiff Rudison's legs down, and was aware Plaintiff Rudison was restrained, simply laying in down, was not being non-compliant with orders, was unarmed, and was not threatening any officer or other person at the time he was punched repeatedly.

124.    Defendant Wind had a reasonable opportunity to prevent Defendants Solis, Lofton, and Johnson from subjecting Plaintiff Rudison to a brutal beating since she was present in the cell, was holding Plaintiff Rudison's legs down, and was aware Plaintiff Rudison was restrained, simply laying in down, was not being non-compliant with orders, was unarmed, and was not threatening any officer or other person at the time he was punched repeatedly.

125.    Defendant Wind chose not to take any action to prevent or discontinue the excessive force against Plaintiff Rudison, and instead chose to hold his legs down so that the other Defendants could assault him.

126.    As a direct and proximate result, Plaintiff Rudison's constitutional right to be free from cruel and unusual punishment under Eighth Amendment was violated, and he suffered conscious pain and suffering.

127.    These injuries were not caused by any other means.

## Defendant Lofton

128.    Defendant Lofton knew that his fellow officers were violating Plaintiff Rudison's constitutional rights by using excessive force in violation of the Eighth Amendment's prohibition on cruel and unusual punishment, he had a reasonable opportunity to prevent the harm, and chose not to act.

129.    Defendant Lofton was deliberately indifferent to the violation of Plaintiff Rudison's right to be free from cruel and unusual punishment.

130. Defendant Lofton was aware that Plaintiff Rudison was being brutally beaten in violation of his right to be free from cruel and unusual punishment by way of excessive force under the Eighth Amendment as he was part of the beating, was aware that Plaintiff Rudison was handcuffed with his hands behind his back and did not have a weapon and was outnumbered four to one in his cell.

131. Defendant Lofton had a reasonable opportunity to prevent Defendants Solis and Johnson from subjecting Plaintiff Rudison to a brutal beating since he was present in the cell, was actively participating in the beating, and was aware Plaintiff Rudison was restrained, simply laying down, was not being non-compliant with orders, was unarmed, and was not threatening any officer or other person at the time he was punched repeatedly by Defendants Johnson and Solis.

132. Defendant Lofton chose not to take any action to prevent or discontinue the excessive force against Plaintiff Rudison, and instead chose to participate in the beating.

133. As a direct and proximate result, Plaintiff Rudison's constitutional right to be free from cruel and unusual punishment under Eighth Amendment was violated, and he suffered conscious pain and suffering.

134. These injuries were not caused by any other means.

**Defendant Solis**

135. Defendant Solis knew that his fellow officers were violating Plaintiff Rudison's constitutional rights by using excessive force in violation of the Eighth Amendment's prohibition on cruel and unusual punishment, he had a reasonable opportunity to prevent the harm, and chose not to act.

136. Defendant Solis was deliberately indifferent to the violation of Plaintiff Rudison's right to be free from cruel and unusual punishment.

36

137.    Defendant Solis was aware that Plaintiff Rudison was being brutally beaten in violation of his right to be free from cruel and unusual punishment by way of excessive force under the Eighth Amendment as he was part of the beating, was aware that Plaintiff Rudison was handcuffed with his hands behind his back and did not have a weapon and was outnumbered four to one in his cell.

138.    Defendant Solis had a reasonable opportunity to prevent Defendants Lofton and Johnson from subjecting Plaintiff Rudison to a brutal beating since he was present in the cell, actively participated in the beating, and was aware Plaintiff Rudison was restrained, simply laying down, was not being non-compliant with orders, was unarmed, and was not threatening any officer or other person at the time he was repeatedly punched and struck with a walkie talkie.

139.    Defendant Solis chose not to take any action to prevent or discontinue the excessive force against Plaintiff Rudison, and instead chose to participate in the beating.

140.    As a direct and proximate result, Plaintiff Rudison's constitutional right to be free from cruel and unusual punishment under Eighth Amendment was violated, and he suffered conscious pain and suffering.

141.    These injuries were not caused by any other means.

**V.**
**PUNITIVE DAMAGES**

142.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

143.    When viewed objectively from the standpoint of Defendants, at the time of the occurrence, Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

144. As a direct, proximate, and producing cause and the intentional, egregious malicious conduct by Defendants, Plaintiff is entitled to recover punitive damages in an amount within the jurisdictional limits of this Court.

## VI.
## DAMAGES

145. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

146. Plaintiff's injuries were a foreseeable event. Those injuries were directly and proximately caused by Defendants Johnson, Solis, and Lofton's uses of excessive and unreasonable force and Defendants Johnson, Solis, Lofton, and Wind's failure to intervene in the uses of excessive force.

147. As a result, Plaintiff is entitled to recover all actual damages allowed by law. Plaintiff contends the Defendants' conduct constitutes malice, evil intent, or reckless or callous indifference to Plaintiff's constitutionally protected rights. Thus, Plaintiff is entitled to punitive damages.

148. As a direct and proximate result of the occurrence which made the basis of this lawsuit, Plaintiff was forced to suffer:

    a. Physical injuries;
    b. Physical pain and suffering; and
    c. Emotional distress, torment, and mental anguish.

149. Pursuant to 42 U.S.C. § 1983 and 1988, Plaintiff seeks to recover, and hereby requests the award of punitive damages, reasonable attorney's fees, and costs of court.

## VII.
## ATTORNEY'S FEES

150. If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. §1988.

## VIII.
## JURY REQUEST

151.    Plaintiff respectfully requests a jury trial.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendants, for an amount in excess of the jurisdictional minimum of this Court. Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully submitted,

*/s/ Scott H. Palmer*
SCOTT H. PALMER,
Texas Bar No. 00797196

*/s/ James P. Roberts*
JAMES P. ROBERTS,
Texas Bar No. 24105721

SCOTT H. PALMER, P.C.
15455 Dallas Parkway, Suite 540
Addison, Texas 75001
Telephone: 214.987.4100
Facsimile: 214.922.9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com

COUNSEL FOR PLAINTIFF